UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


WAYNE FRITZ (#96177)

VERSUS                                    CIVIL ACTION

N. BURL CAIN, ET AL                       NUMBER 13-556-JWD-SCR


**<u>NOTICE</u>**


        Please take notice that the attached Magistrate Judge's Report
has been filed with the Clerk of the U. S. District Court.
        In accordance with 28 U.S.C. § 636(b)(1), you have 14 days
after being served with the attached report to file written
objections to the proposed findings of fact, conclusions of law,
and recommendations set forth therein.  Failure to file written
objections to the proposed findings, conclusions and
recommendations within 14 days after being served will bar you,
except upon grounds of plain error, from attacking on appeal the
unobjected-to proposed factual findings and legal conclusions
accepted by the District Court.

        ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE
WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

        Baton Rouge, Louisiana, January 29, 2015.


                                STEPHEN C. RIEDLINGER
                                UNITED STATES MAGISTRATE JUDGE

WAYNE FRITZ (#96177)

VERSUS                                          CIVIL ACTION

N. BURL CAIN, ET AL                             NUMBER 13-556-JWD-SCR

**MAGISTRATE JUDGE'S REPORT**

Before the court is the defendants' Motion for Summary
Judgment and the Plaintiff's Motion for Summary Judgment. Record
document numbers 35 and 51, respectively.

For the reasons which follow, the defendants' Motion for
Summary Judgment should be granted in part and the plaintiff's
Motion for Summary Judgment should be denied.

**Background**

Pro se plaintiff, an inmate at Louisiana State Penitentiary,
Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983
against Warden N. Burl Cain, Asst. Warden Kenneth Norris, Asst.
Warden Stephanie Lamartiniere and Dr. Jason Collins. Plaintiff
alleged that the defendants were deliberately indifferent to his
serious medical needs in violation of his Eighth Amendment rights.

Defendants moved for summary judgment relying on a statement
of undisputed facts, the affidavits of Warden Cain, Asst. Warden
Norris, Asst. Warden Lamartiniere, Dr. Jason Collins and Dr. Paul

Toce, copies of the plaintiff's medical records and copies of Administrative Remedy Procedure ("ARP") LSP-2012-3193.

Plaintiff moved for summary judgment[1] relying on a statement of undisputed facts, the affidavit of inmate Hymel Varnado, a copy of a letter from inmate Michael Zihlavsky to Warden Cain dated February 21, 2012, a copy of Offender Posted Policy #006, a copies of a portions of Department Regulation No. B-06-001 and Department of Public Safety and Corrections Services Health Care Manual including Health Care Policy Nos. HC-01, HC-03, HC-05, HC-11,HC-13, HC-14, HC-15, HC-16, HC-19 and HC-34, a copy of portions of the LSP Correctional Officer Training Program and the training transcripts of Warden Cain, Asst. Warden Lamartiniere, Asst. Warden Norris and Dr. Collins, copies of the plaintiff's medical records, position descriptions and the results of ARP LSP-2012-3193.[2]

---

[1] Plaintiff addressed claims in his motion for summary judgment which were not raised in the complaint, including but not limited to, claims that he was denied adequate medication and treatment following his herniorrhaphy, the implementation of a "slow roll" policy, the implementation of a policy forcing inmates to lift heavy objects to clean their cells, the use of inadequately trained medical personnel, failing to prioritize consultation forms to outside medical facilities, and retaliation for assisting another inmate in his lawsuit. Plaintiff's motion for summary judgment shall not be treated as an amendment to his complaint.

[2] Plaintiff also submitted a Declaration Under Penalty of Perjury, record document number 51-3, pp. 25-27, but it is not signed and was therefore not considered in support of his motion for summary judgment.

Plaintiff also argued that because requests for admissions allegedly propounded on November 26, 2013, are deemed admitted by operation of law, the admissions should be considered in support of

(continued...)

# I. Factual Allegations

Plaintiff alleged that he completed a sick call request form seeking treatment for lower abdominal pain. Plaintiff alleged that he was examined at the R.E. Barrow Treatment Center on January 27, 2015 by a treating physician who diagnosed a hernia.

Plaintiff alleged that after experiencing severe pain, he declared himself a medical emergency and was examined by Dr. Toce. Plaintiff alleged that Dr. Toce told him he required surgery but due to a lack of funding, the surgery would not be performed. Plaintiff alleged that he was told that only inmates with life-threatening conditions would be scheduled for surgery.

Plaintiff alleged that his condition worsened and he began experiencing excruciating pain and passed blood. Plaintiff alleged that he made sick call and declared himself a medical emergency on several occasions. Plaintiff alleged that he informed Asst. Warden Poret about his serious medical needs, but he was ignored.

Plaintiff alleged that his hernia ruptured and he was transported to an outside facility for emergency surgery.

---

[2](...continued)
his motion for summary judgment. Record document number 51-2, pp. 9-15. However, in the Ruling on Motion to Compel Discovery the court noted that none of the discovery requests, including the request for admissions, were properly served on the defendants. Record document number 38. Because the defendants were not properly served with the request for admissions, the admissions were not admitted pursuant to Rule 36, Fed.R.Civ.P. Moreover, a review of the record showed that, even though the defendants were not properly served, they nonetheless filed answers to the admissions. Record document numbers 26, 27, 28 and 30.

Plaintiff alleged that the defendants ignored his complaints of severe pain and denied him adequate medical treatment, and that the defendants have adopted a policy of providing only minimal care to prisoners based upon cost.

## II. Applicable Law and Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). "[A] party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). The burden then shifts to "the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is genuine issue for trial.'" *Id*. at 324; *see* Fed.R.Civ.P. 56(c)(1). "If a party fails to properly support an assertion of fact ... as required by Rule 56(c), the court may [ ] ... grant summary judgment if the motion and support materials - including the facts considered undisputed - show that the movant is entitled to it." Fed.R.Civ.P. 56(e)(3).

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986).

## B. Rights of Other Prisoners

The right to bring an action under the civil rights act is personal in nature and may not be asserted by third parties. *Coon v. Ledbetter*, 780 F.2d 1158 (5th Cir. 1986). All persons who claim a deprivation of constitutional rights must prove some violation of their personal rights. *Id.* Insofar as the plaintiff's complaint can be read to assert a deliberate indifference claim on behalf of other prisoners, the claim is not a personal right which he may assert.

## C. Exhaustion of Administrative Remedies

Defendants argued that the plaintiff failed to exhaust available administrative remedies regarding his claims against Asst. Warden Norris and Asst. Warden Lamartiniere before filing suit. Specifically, the defendants argued that the plaintiff filed ARP LSP-2012-3193 complaining that he did not receive adequate medical treatment and surgery for his hernia. Defendants argued that the plaintiff did not alert prison officials to any claim against Asst. Warden Norris and Asst. Warden Lamartiniere.

Defendants argued that only the plaintiff's deliberate indifference claims against Warden Cain and Dr. Collins were exhausted.

Section 1997e of Title 42 of the United States Code provides in pertinent part as follows:

> (a) Applicability of Administrative Remedies.--No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Under 42 U.S.C. § 1997e(a), a prisoner must exhaust available administrative remedies before filing a § 1983 suit and is precluded from filing suit while the administrative complaint is pending. *Clifford v. Gibbs*, 298 F.3d 328, 332 (5th Cir. 2002); *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998), *abrogated in part* by *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910 (2007) (abrogating the holding that a district court may dismiss a civil complaint *sua sponte* for failure to exhaust); *Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998); *Harris v. Hegmann*, 198 F.3d 153, 157 (5th Cir. 1999). A prisoner must exhaust his administrative remedies by complying with applicable prison grievance procedures before filing a suit related to prison conditions. *Johnson v. Johnson*, 385 F.3d 503, 514 (5th Cir. 2004). Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90,

126 S.Ct. 2378, 2386 (2006). Because § 1997e(a) expressly requires exhaustion, prisoners may not deliberately bypass the administrative process by flouting an agency's procedural rules. *Id.*, 126 S.Ct. at 2389-90. The § 1997e(a) exhaustion requirement is mandatory, irrespective of the forms of relief sought and offered through administrative avenues. *Days v. Johnson*, 332 F.3d 863, 866 (5th Cir. 2003).

Under the Fifth Circuit's strict approach to the Prison Litigation Reform Act's exhaustion requirement, mere "substantial compliance" with administrative remedy procedures does not satisfy exhaustion. *See Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).

The Prison Litigation Reform Act (PLRA) does not specify who must be named in a prison grievance in order to properly exhaust the prison grievance system. *Jones v. Bock*, 549 U.S. 199, 217-218, 127 S.Ct. 910, 922-23 (2007). Instead, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 923.

The primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued. *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004). A grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit. *Id.*

Plaintiff alleged that he filed ARP LSP-2012-3193 regarding the claims raised in the Complaint.[3] The summary judgment evidence showed that the plaintiff filed ARP LSP-2012-3193 on October 17, 2012, complaining that in March 2012, he was informed by Dr. Toce that he needed surgery to repair a hernia but that due to budget cuts, the State of Louisiana did not have funding for the surgery.[4]

On November 28, 2012, the First Step Response was issued.[5] The response was prepared by L. Lofton for Asst. Warden Norris and was denied by Darryl Vannoy.[6] In the First Step Response prison officials noted that the plaintiff's medical records indicated that he had received medical care on a regular basis and that he was referred to Earl K. Long Surgery Clinic for evaluation.[7] Respondent denied that the plaintiff had been denied adequate medical treatment.[8]

The summary judgment evidence showed that the plaintiff clearly placed prison officials on notice of his claim that he was denied adequate medical treatment and surgery for his hernia.

As noted above, the primary purpose of a grievance is to alert

---

[3] Record document number 1, p.3, ¶ II.C.1.

[4] Record document number 35-8, pp. 15-16.

[5] *Id.* at 10.

[6] *Id.*

[7] *Id.*

[8] *Id.*

prison officials to a problem, not to provide personal notice to a particular official that he may be sued. However, a grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit. Plaintiff's ARP provided prison officials with a fair opportunity to address his deliberate medical indifference claim against the defendants, to the extent the plaintiff alleged that each defendant was deliberately indifferent to his serious medical needs for failure to provide adequate medical treatment and surgery for his hernia. The summary judgment evidence showed that the plaintiff failed to exhaust available administrative remedies regarding any other claim.

In accordance with the Adult Administrative Remedy Procedures, an inmate commences the process by writing a letter to the warden in which he briefly sets out the basis for his claim and the relief sought. La. Admin. Code title 22, pt. I § 325(J)(1). The request shall be screened by the ARP screening officer and a notice will be sent to the inmate advising that his request is being processed or is rejected. *Id*. If a request is rejected, it must be for one of the enumerated reasons, which must be noted on the request for administrative remedy. *Id*. at § 325(I)(1)(a)(ii). An administrative grievance may be rejected on grounds that it is a duplicate request. *Id*. at § 325(I)(1)(a)(ii)(c).

The summary judgment evidence supports a finding that except

for his deliberate medical indifference claim against the defendants based on the failure to timely provide him with hernia surgery, the plaintiff failed to exhaust available administrative remedies regarding any other claim asserted in his Complaint prior to filing suit, as required by 42 U.S.C. § 1997e(a).

### D. Official Capacity

Defendants argued that they are entitled to Eleventh Amendment immunity insofar as the plaintiff sued them in their official capacity.

The distinction between personal and official capacity suits was clarified by the U.S. Supreme Court in *Hafer v. Melo, et al,* _ 502 U.S. 21, 112 S.Ct. 358 (1991). A suit against a state official in his official capacity is treated as a suit against the state. *Id.*, 502 U.S. at 25, 112 S.Ct. at 361, *citing Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985). Because the real party in interest in an official-capacity suit is the governmental entity and not the named individual, the "entity's 'policy or custom' must have played a part in the violation of federal law." *Graham, supra*, at 166, 105 S.Ct. at 3105.

Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under of color of state law. A showing that the official, acting under color of state law, caused the deprivation of a federal right

is enough to establish personal liability in a section 1983 action. *Hafer*, 502 U.S. at 25, 112 S.Ct. at 362.

*Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989), makes it clear that the distinction between official-capacity suits and personal-capacity suits is more than a "mere pleading device." Officers sued in their personal capacity come to court as individuals. A state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the state. *Will*, 491 U.S. at 71, 109 S.Ct. at 2311, n. 10, *quoting Kentucky v. Graham*, 473 U.S. at 167, 105 S.Ct. at 3106, n. 14.

Thus, the plaintiff may recover money damages against the defendants insofar as the defendants were sued in their individual capacities for actions taken by them under color of state law which caused the deprivation of constitutional rights. Additionally, because the plaintiff sought prospective injunctive relief his claim against the defendants in their official capacity is also actionable under § 1983. Of course, the plaintiff must prove a deprivation of a constitutional right to obtain any relief, whether in the form of damages or prospective injunctive relief.

### E. Deliberate Medical Indifference Claim

Plaintiff alleged that the defendants were deliberately

indifferent to his serious medical needs. Specifically, the plaintiff alleged that he was diagnosed with a hernia and was advised by Dr. Toce that he required surgery but he was denied the hernia surgery due to a lack of funds. Plaintiff alleged that his condition worsened and his hernia ruptured causing him unnecessary pain and suffering.

A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to an inmate's health or safety only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970 (1994). The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Id*.

To prevail on an Eighth Amendment claim for deprivation of medical care a prisoner must prove that the care was denied and that the denial constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285 (1976); *Johnson v. Treen*, 759 F.2d 1236 (5th Cir. 1985). Whether the plaintiff received the treatment he felt he should have is not the issue. *Estelle v. Gamble*, *supra*; *Woodall v. Foti*, 648 F.2d 268 (5th Cir. 1981). Unsuccessful medical treatment does not provide a basis for a civil action under 42 U.S.C. § 1983 for violation of

a constitutional right. *Varnado v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991), *Johnson v. Treen, supra*. Negligence, neglect or medical malpractice does not rise to the level of a constitutional violation. *Varnado, supra*.

To be liable under § 1983 a person must either be personally involved in the acts causing the alleged deprivation of constitutional rights, or there must be a causal connection between the act of that person and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756 (5th Cir. 1983). Plaintiff's allegations that the defendants are responsible for the actions of their subordinates is insufficient to state a claim under § 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018 (1978).

Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation. *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987); *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985), *cert. denied*, 480 U.S. 917, 107 S.Ct. 1369 (1987) (quoting *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 2037 (1978)). The existence of a constitutionally deficient policy cannot be inferred from a single wrongful act. *O'Quinn v. Manuel*, 773 F.2d 605, 609, 610 (5th Cir. 1985) (citing *City of*

*Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427 (1985)).

Plaintiff's medical records showed that on April 19, 2012, the plaintiff underwent a physical examination by Dr. Paul Toce.[9]  A right sided indirect inguinal hernia was noted[10] and a general surgery consultation was ordered.[11]

Plaintiff's medical records[12] showed that on May 17, 2012, the plaintiff declared himself a medical emergency.[13]  Plaintiff complained that he was experiencing pain from his hernia, that he had not seen a doctor in more than a month and that he did not receive the double portion meals previously ordered by his treating physician.[14]  Plaintiff denied that he was experiencing constipation or diarrhea.[15]  Plaintiff's blood pressure was 122/84, his respiration rate was 14, his pulse was 76 and his body temperature was 98.6°, all within normal limits.[16]

---

[9] Record document number 51-8, p. 18.

[10] *Id.*

[11] *Id.* at 17-18.

[12] The parties provided more than 300 pages of the plaintiff's medical records.  Record document numbers 35-3, 35-4, 51-7, 51-8 and 51-9.  The number of unique records is less due to both side submitting some of the same records.

[13] Record document number 51-7, p. 2.

[14] *Id.*

[15] *Id.*

[16] *Id.*

Plaintiff's medical records showed that on July 2 and 18, August 3, and September 5, 2012, the plaintiff was examined at the Hepatitis Clinic.[17] On July 15, 2012, the plaintiff was examined at sick call for complaints of edema in his left knee when walking, that his hernia pops out when walking and he was constipated for five days.[18] Physical examination revealed no edema at that time.[19] Plaintiff was ordered an enema.[20] On August 8, 2012, the plaintiff was examined at the Physician's Clinic of the R.E. Barrow Treatment Center for a follow-up examination regarding his left knee and right groin.[21] Plaintiff complained of constipation.[22] Physical examination of the plaintiff's left knee showed no edema with mild crepitus.[23] A notation indicated that a surgical evaluation of the RIH [right inguinal hernia] was pending.[24] Plaintiff was prescribed medication for constipation.[25]

---

[17] Record document number 35-3, pp. 70, 69, 68, 65.

[18] Record document number 51-7, p. 3.

[19] *Id.*

[20] *Id.*

[21] Record document number 35-3, p. 67.

[22] *Id.*

[23] *Id.*

[24] *Id.* The document does not indicate who was evaluating the plaintiff.

[25] *Id.*

Plaintiff's medical records showed that on October 14, 2012, the plaintiff completed a Health Care Request Form seeking routine sick call for complaints that he needs his aspirin renewed and chronic hernia pain.[26] Plaintiff was ambulatory without difficulty.[27] On October 23, 2012, the plaintiff completed a Health Care Request Form seeking routine sick call for complaints of chronic hernia pain and that his double portion diet was scheduled to expire.[28] Plaintiff's pupils were equal and responsive to light, his skin turgor was good, there was no protrusion of the hernia and the remainder of the physical examination was unremarkable.[29]

Plaintiff's medical records showed that on December 17, 2012, the plaintiff completed a Health Care Request Form seeking routine sick call for complaints of difficulty ambulating due to right hernia pain and constipation.[30] Plaintiff was prescribed ibuprofen.[31] On January 14, 2013, the plaintiff was examined at the Physician's Clinic of the R.E. Barrow, Jr. Treatment Center.[32]

---

[26] Record document number 51-7, p. 4.

[27] *Id.*

[28] *Id.* at 5.

[29] *Id.*

[30] *Id.* at 6.

[31] *Id.*

[32] *Id.* at 15.

Plaintiff was prescribed Naproxen®.[33]  On January 16, 2013, the plaintiff completed a Health Care Request Form seeking routine sick call for complaints that the pain medication prescribed on January 14, 2013, was not available at pill call.[34]

Plaintiff's medical records showed that on March 6, 2013, the plaintiff was examined at the Physician's Clinic at the R.E. Barrow, Jr. Treatment Center primarily regarding his right inguinal hernia.[35]

On March 29, 2013, the plaintiff was examined at the emergency room of the R.E. Barrow, Jr. Medical Center for complaints of swollen testicles and hernia.[36]  Plaintiff was transported to Earl K. Long Medical Center for evaluation[37] where he underwent a right inguinal hernia repair.[38]  On March 30, 2013, the plaintiff was transported back to the prison facility and was admitted to the R.E. Barrow, Jr. Treatment Center for post-surgery observation.[39]

All of the summary judgment evidence has been considered. Even though there may be many facts that are not genuinely

---

[33] *Id.*

[34] *Id.* at 7.

[35] *Id.* at 16.

[36] *Id.* at 23.

[37] *Id.*

[38] Record document number 35-3, p. 102.

[39] *Id.* at 29.

disputed, on summary judgment the court must draw all reasonable inference from both the disputed and undisputed facts in favor of the party opposing summary judgment. Drawing all reasonable inferences in favor of the plaintiff, as the party opposing the defendants' summary judgment motion, the summary judgment evidence is sufficient for a reasonable jury to find that the defendants were deliberately indifferent to the plaintiff's serious need for hernia surgery. There is no evidence that any defendant or outside consultant affirmatively determined that the plaintiff did not need surgery to repair his hernia. Nonetheless, the defendants' chosen procedure for obtaining medically needed surgery did not result in the surgery being performed. A reasonable jury could find that the defendants knew delaying surgery for an indefinite, lengthy period of time would pose a serious risk that emergency surgery would become necessary, at which time the defendant would have no choice but to provide it or risk the plaintiff's death. Therefore, a reasonable jury could find that the defendants were deliberately indifferent to the plaintiff's serious medical needs.

For essentially the same reasons, the plaintiff's summary judgment motion should also be denied. Viewing all of the summary judgment evidence in the light most favorable to the defendants, the parties opposing the plaintiff's summary judgment motion, a reasonable jury could find that the defendants provided reasonably prompt and appropriate medical evaluation and treatment for the

plaintiff's hernia condition.  There is no evidence any defendant actually denied the plaintiff hernia surgery due to LSP budget constraints.

**F. Supplemental Jurisdiction**

Plaintiff sought to invoke the supplemental jurisdiction of this court.  District courts may decline to exercise supplemental jurisdiction over a claim if the claim raises a novel or complex issue of State law; the claim substantially predominates over the claims over which the district court has original jurisdiction; if the district court has dismissed all claims over which it had original jurisdiction; or for other compelling reasons.  28 U.S.C. § 1367.  Plaintiff's allegations of deficient and unsuccessful medical care amount to state law negligence or medical malpractice claims.  The court should decline to exercise supplemental jurisdiction over such state law claims.

**RECOMMENDATION**

It is the recommendation of the magistrate judge that:

(1) the defendants' Motion for Summary Judgment be granted in part, dismissing any claims made on behalf of other prisoners and any other claim asserted in his Complaint except for his deliberate medical indifference claim against the defendants based on the failure to timely provide him with hernia surgery, and denying the remainder of the defendants' motion;

(2) the Plaintiff's Motion for Summary Judgment be denied;

(3) the court decline to exercise supplemental jurisdiction over any state law claims and these claims be dismissed without prejudice; and,

(4) this action be referred back to the magistrate judge for further proceedings on the plaintiff's Eighth Amendment deliberate medical indifference claim.

Baton Rouge, Louisiana, January 29, 2015.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE